Rolf **RUPPENTHAL**, Appellant (Defendant),

v.

**STATE** of Wyoming, acting By and Through the **ECONOMIC DEVELOPMENT AND STABILIZATION BOARD**, Appellee (Plaintiff).

No. 92–147.

Supreme Court of Wyoming.

April 9, 1993.

William D. Bagley, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., and Mary B. Guthrie, Senior Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellant Rolf Ruppenthal appeals to challenge the dismissal of his counterclaim against Appellee State of Wyoming in a debt-collection case. The district court dismissed the counterclaim because Mr. Ruppenthal failed to comply with the requirements of the Wyoming Governmental Claims Act, Wyo.Stat. §§ 1–39–101 to –120 (1988 & Supp.1992).

We reverse and remand.

Mr. Ruppenthal frames the issues as follows:

1. Is compliance with the Wyoming Governmental Claims Act necessary with respect to the Ruppenthal Counterclaim?

2. Does Wyoming have sovereign immunity with respect to the Ruppenthal Counterclaim?

The State restates the issues in this manner:

I. Whether the trial court properly dismissed Appellant's counterclaim, because no claim was filed with the State Auditor.

II. Whether the trial court properly dismissed Appellant's counterclaim because of the State's sovereign immunity.

III. Whether this appeal should be dismissed.

The State of Wyoming, acting by and through the Economic Development and Stabilization Board, loaned Atra Corporation $200,000 on June 7, 1988, $100,000 on July 8, 1988, and $420,000 on October 28, 1988. In connection with each loan, Atra executed a commercial promissory note, and Atra's president, Mr. Ruppenthal, executed a personal guaranty. The loans were made to enable Atra to establish a shuttle bus manufacturing business.

Atra failed to make any payments, and the State consequently filed a complaint against Atra and Mr. Ruppenthal on December 18, 1991. The complaint, as amended, alleged that the commercial promissory notes were in default for nonpayment and requested judgment for the principal amount of $720,000, plus accrued interest and attorney's fees.

Atra and Mr. Ruppenthal filed an answer to the amended complaint on February 3, 1992. They admitted executing the relevant documents but denied being liable to the State. In conjunction with the answer, Mr. Ruppenthal counterclaimed for damages resulting from the State's alleged wrongful misconduct. Specifically, Mr. Ruppenthal complained that the State induced him to guarantee the loans by misrepresenting that it would support Atra with money for training, business expertise, et cetera. Mr. Ruppenthal also complained that the State released confidential information to his detriment.

The State filed a motion to dismiss Mr. Ruppenthal's counterclaim on February 20, 1992. The district court granted this motion, following a hearing, by an order entered on March 19, 1992. The district court reasoned: "[T]here is no distinction between a complaint and a counterclaim under the Wyoming Governmental Claims Act and ... the Defendant's failure to comply with the requirements of the Governmental Claims Act [is] fatal to the counterclaim."

On April 6, 1992, the State filed a motion for summary judgment on its amended complaint. The State supported its motion with affidavits which substantiated its claims for the loan principal, accrued interest, and attorney's fees. Atra and Mr. Ruppenthal failed to file counteraffidavits or to otherwise defend. Accordingly, the district court granted a summary judgment in favor of the State by an order filed on June 5, 1992, for the amount of $877,283.10, with interest to accrue at the rate of $170 a day from December 10, 1991, until the date of payment. Mr. Ruppenthal filed a notice of appeal on June 18, 1992, to challenge the district court's dismissal of his counterclaim.

As a preliminary matter, we must address the State's argument that this appeal should be dismissed. The State contends that Mr. Ruppenthal should have filed a notice of appeal within fifteen days of the district court's March 19, 1992, order which dismissed his counterclaim. The State's position is that the dismissal order was a final order or judgment and that a notice of appeal should have been filed no later than April 3, 1992. The State asserts that, because a notice of appeal was not filed until June 18, 1992, this Court is jurisdictionally barred from considering this appeal.

■ W.R.A.P. 2.01 [1] requires that a notice of appeal be filed within fifteen days from the entry of a final order or judgment, except in limited circumstances not presently applicable. The failure to comply with this simple requirement constitutes a jurisdictional bar to appellate review.

W.R.A.P. 1.02; [2] *Miller v. Murdock*, 788 P.2d 614, 615 (Wyo.1990) (per curiam). W.R.A.P. 1.05 [3] provides in relevant part that a final order is "an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment." A final order or judgment is defined more generally as being one which adjudicates the merits of the entire controversy and leaves nothing for future consideration. *Stone v. Stone*, 842 P.2d 545, 548 (Wyo.1992).

The State relies heavily upon the above-quoted portion of W.R.A.P. 1.05 to contend that the dismissal order was a final, appealable order. W.R.A.P. 1.05 must, however, be read with W.R.C.P. 54(b) in the context of a multiple-claim or multiple-party case. *See Olmstead v. Cattle, Inc.*, 541 P.2d 49 (Wyo.1975) (decided before the revision of the Wyoming Rules of Appellate Procedure). W.R.C.P. 54(b) provides:

(b) Judgment upon multiple claims or involving multiple parties.—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

■ Applying the foregoing, we conclude that this case falls within the ambit of W.R.C.P. 54(b). The district court's dis-

---

**1.** Revised effective November 1, 1992.

**2.** *See supra* note 1 (now W.R.A.P. 1.03).

**3.** *See supra* note 1.

missal order adjudicated only one of the two claims involved in the controversy. As such, the dismissal order was not appealable until after resolution of the State's claim absent a W.R.C.P. 54(b) certification by the district court. *Mott v. England,* 604 P.2d 560, 563 (Wyo.1979). A W.R.C.P. 54(b) certification requires that the district court expressly determine that no just reason exists to delay an appeal and expressly direct that judgment be entered on the adjudicated portion of the case. W.R.C.P. 54(b). *See generally* 10 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2655 (2d ed. 1983 & Supp.1992). The record does not reflect that the district court ever made such a certification. Therefore, the dismissal order remained a revisable, interlocutory order until the entry of a final judgment.[4] W.R.C.P. 54(b). As Mr. Ruppenthal filed his notice of appeal within fifteen days of the entry of the summary judgment, the final order or judgment in this case, we hold that this Court has jurisdiction to consider this appeal. *See* W.R.A.P. 2.01.

On appeal, Mr. Ruppenthal raises two issues which correspond to the grounds relied upon by the district court in dismissing his counterclaim. The district court dismissed the counterclaim because: (1) Mr. Ruppenthal failed to file a claim with the State as was required by § 1–39–113 of the Wyoming Governmental Claims Act; and (2) the Wyoming Governmental Claims Act does not contain an immunity exception for the conduct complained of by Mr. Ruppenthal. Mr. Ruppenthal does not contend that the district court's findings are incorrect; rather, he contends that such findings

are not fatal to his counterclaim. He argues that, as a matter of equity, a defendant to a government-initiated lawsuit should be able to defensively assert any counterclaim which arises out of the transaction or occurrence upon which suit is being brought.[5]

A review of Wyoming's procedural rules and statutory law reveals that the success of Mr. Ruppenthal's appeal indeed hinges on whether this Court will imply a waiver of sovereign immunity when the government initiates a lawsuit. W.R.C.P. 13[6] governs the pleading of counterclaims. W.R.C.P. 13(a) provides, with limited exceptions not herein applicable, that a claim must be pleaded as a counterclaim if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." W.R.C.P. 13(b) provides that any claim which does not fall within subsection (a) can be, but does not need to be, pleaded as a counterclaim. However, these subsections are qualified by W.R.C.P. 13(d), which reads:

> (d) Counterclaim against the state.— These rules shall not be construed to enlarge beyond the limits fixed by law the right to assert counterclaims or claim credits against the state or against a county, municipal corporation or other political subdivision, public corporation, or any officer or agency thereof.

Subsection (d) makes it clear that subsections (a) and (b) are procedural rules which do not affect the substantive question of whether a counterclaim is barred by the doctrine of sovereign immunity. Consequently, we must examine this question.

---

**4.** Professors Wright, Miller, and Kane explain in their treatise:

> [F.R.C.P. 54(b) ] makes clear when an appeal must be sought or the right to appeal will be lost, since the time for appeal begins to run from the entry of an order that meets the requirements of the rule. If the court does not enter a Rule 54(b) order, the litigant knows that waiting until the disposition of the entire case before seeking an appeal will not lose him the right to have the order reviewed.
> 10 WRIGHT, FEDERAL PRACTICE AND PROCEDURE, *supra,* § 2654 at 39.

**5.** Mr. Ruppenthal also argues that the State violated Article 16, Section 6 of the Wyoming Con-

stitution by loaning money to Atra. Article 16, Section 6 generally prohibits the State or any other political subdivision from lending money to, extending credit to, or giving donations to the private sector. However, an exception to this prohibition was created by a constitutional amendment in 1986. Article 16, Section 12 of the Wyoming Constitution established an economic development loan fund for the express purpose of enabling the State to make private sector loans. This contention clearly lacks merit.

**6.** Revised effective March 24, 1992.

The doctrine of sovereign immunity, which provides that a sovereign is not subject to suit without its express consent, is recognized in Wyoming. *See* Wyo. Const. Art. 1, § 8. The Wyoming Governmental Claims Act provides that governmental entities and their employees are immune from tort liability, except in those areas identified in §§ 1–39–105 to –112. If the government's alleged tortious conduct falls within one of the excepted areas, the Wyoming Governmental Claims Act requires that an itemized statement of the claim be filed with the appropriate governmental entity within two years of the act, error, or omission which gave rise to the claim or, in some instances, within two years after discovery of the act, error, or omission which gave rise to the claim. Section 1–39–113. The Wyoming Governmental Claims Act further provides that, generally, legal action on any claim falling within the purview of the Act must be commenced within one year after the filing of a claim as specified in § 1–39–113. Section 1–39–114. Compliance with the terms of the Wyoming Governmental Claims Act is necessary to avoid a claim being barred by the doctrine of sovereign immunity. *Cranston v. Weston County Weed and Pest Board*, 826 P.2d 251, 255 (Wyo.1992); *Duran v. Board of County Commissioners of Sweetwater County*, 787 P.2d 971 (Wyo.1990).

In the instant case, Mr. Ruppenthal counterclaimed for damages allegedly resulting from the State's misrepresentations relating to its ability to support new business and from the State's disclosure of confidential information gathered in the loan-making process. This counterclaim arises out of and is related to the loan-making transaction which lies at the heart of the State's claim to recover on Mr. Ruppenthal's guaranty. As such, it constitutes a compulsory counterclaim under W.R.C.P. 13(a). *See generally* 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1410 (2d ed. 1990). The Wyoming Governmental Claims Act, however, contains no immunity exception for the type of tortious conduct complained of by Mr. Ruppenthal. *See* §§ 1–39–105 to –112. It is also undisputed that Mr. Ruppenthal failed to comply with the claims procedure requirements of the Wyoming Governmental Claims Act. Therefore, absent a holding by this Court that a different set of rules applies to claims asserted as counterclaims in government-initiated lawsuits, the district court's dismissal order must be affirmed.

No Wyoming case has considered the issue of whether a claim which would otherwise be barred by the doctrine of sovereign immunity may be asserted as a counterclaim in a government-initiated lawsuit. We find, however, that *Hawkeye–Security Insurance Co. v. Apodaca*, 524 P.2d 874 (Wyo.1974), is instructive. In that case, the issue was whether an insured's claim which was time barred under the terms of an insurance policy could be asserted as a counterclaim in a lawsuit initiated by an insurance company. In the course of discussing this issue, this Court stated:

> The pleading of a counterclaim being a procedural matter does not affect the substantive question as to whether a limitation period bars the claim which is pleaded as a counterclaim. Thus recoupment, which by definition arises out of the transactional subject of the suit, when used only to defeat the claim sued upon is not barred by a limitation period if the main action is timely. While the defense of recoupment exists as long as the main cause exists, the claim, as an independent action, would be barred by limitations. The purpose of limitation provisions is to bar actions and not suppress or deny matters of defense, and the general rule is that limitations are not applicable to defenses but apply only where affirmative relief is sought.

524 P.2d at 879 (citations omitted).

The rule applied in *Hawkeye–Security Insurance Co.* is similar to the rule which prevails in the sovereign immunity context. In the leading federal case of *Frederick v. United States*, 386 F.2d 481 (5th Cir.1967), the United States sued the guarantor of a government loan to recover an amount allegedly due after the sale of collateral. The guarantor counterclaimed for damages, alleging that the sale of collateral was " 'unconscionable and tainted with

fraud.'" 386 F.2d at 484. The federal district court dismissed the guarantor's counterclaim. On appeal, the relevant issue was whether the United States enjoyed sovereign immunity because the guarantor failed to comply with the claims procedure provided in 28 U.S.C. § 2406. The federal appellate court answered this issue negatively after assessing the interplay of the doctrine of sovereign immunity, F.R.C.P. 13, and 28 U.S.C. § 2406. The *Frederick* court concluded:

> [W]hen the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the "same transaction or occurrence test" nor to claims of a different form or nature than that sought by it as plaintiff nor to claims exceeding in amount that sought by it as plaintiff.

386 F.2d at 488 (footnote omitted).

The rule as articulated in *Frederick* has received broad acceptance in both federal and state courts. *See, e.g., Federal Deposit Insurance Corporation v. Carter*, 701 F.Supp. 730 (C.D.Cal.1987); *Federal Deposit Insurance Corporation v. Shinnick*, 635 F.Supp. 983 (D.Minn.1986); *Federal Savings and Loan Insurance Corporation v. Williams*, 599 F.Supp. 1184 (D.Md. 1984); *State Board of Regents v. Holt*, 8 Kan.App.2d 436, 659 P.2d 836 (1983); *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988); and *State ex rel. State Highway Commission of New Mexico v. Town of Grants*, 69 N.M. 145, 364 P.2d 853 (1961). *See also* 6 WRIGHT, FEDERAL PRACTICE AND PROCEDURE, *supra*, § 1427 at 197–98; 3 JAMES WM. MOORE & RICHARD D. FREER, MOORE'S FEDERAL PRACTICE ¶ 13.28 (2d ed. 1983); and 72 AM.JUR.2D *States, Territories, and Dependencies* § 95 (1974). While numerous justifications for the rule have been given, perhaps none are as persuasive as a simple statement made by the New Mexico Supreme Court:

> To permit [a recoupment defense] would seem to be no more than simple justice; to deny it the right would be grossly inequitable. No one would assert that in an action by the sovereign, valid legal defenses should be denied the defendant.

*Town of Grants*, 69 N.M. at 149, 364 P.2d at 855.

■ In accord with the authority cited above, we hold that a claim which would otherwise be barred by the doctrine of sovereign immunity may be asserted as a counterclaim in a government-initiated lawsuit if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," W.R.C.P. 13(a), and is asserted to reduce or defeat the government's claim. As Mr. Ruppenthal's counterclaim satisfies the same "transaction or occurrence" test, it may be asserted to the extent that it seeks to reduce or defeat the judgment obtained by the State.

Reversed and remanded for proceedings consistent with this opinion.